324-0026 Lindsey Miller and Doug Miller, appellants by Colin W. Anderson v. Andrew Klingsporn VDM in Naperville Animal Hospital v. Patrick Strange Mr. Anderson, are you ready to proceed? Thank you, Your Honor. May it please the Court, Counsel. My name is Colin William Anderson. I'm with the Law Firm of Anderson in Newton, B.C. I'm counsel for the plaintiffs' appellants Lindsey Miller and Doug Miller. There are essentially four issues before this honorable court. First is whether the circuit court erred when it held the plaintiffs could not state a claim under the Illinois Humane Care for Animals Act unless they could allege the defendant appellee, Dr. Andrew Klingsporn, acted with specific intent in causing the plaintiff's companion dog, Maylee, to suffer serious injury or death when Dr. Klingsporn failed to perform surgery for an extended period of time and when he did perform surgery, made a large incision across Maylee's abdomen without first administering any local or general anesthetic or other painkillers. This caused Maylee to go into cardiac arrest and unfortunately die. Second is whether the circuit court erred when it held the plaintiffs could not state a claim under the Illinois Consumer Fraud Act even where Dr. Klingsporn and his employer, the defendant appellee Naperville Animal Hospital, made false statements and engaged in other deceptive acts such as altering Maylee's records and otherwise covering their tracks, for lack of a better term, to the defendants. This was outside the scope and completely after the defendant's provision of veterinarian services. The third issue is whether the circuit court erred when it dismissed the plaintiff's breach of contract claims which were put in the alternative to their negligence claim. The circuit court held the breach of contract claims, failed to state the claims as a matter of law because they were duplicative of the plaintiff's veterinarian malpractice negligence claim. Finally, the question is whether the circuit court erred when it granted the defendant partial summary judgment on the plaintiff's surviving consumer fraud claim. The plaintiff contends the court did err by relying on inadmissible hearsay. For the reasons set forth in the plaintiff appellee's brief, we are asking this honorable court to reverse the circuit court's orders on each of these issues and hold the plaintiff's third amended complaint sufficiently stated claims for violations of the Humane Care for Animals Act, violations of the Illinois Consumer Fraud Act, and for breach of contract. Starting with the first issue, arguing the circuit court did err when it dismissed count three of the plaintiff's third amended complaint asserting a cause of action under the Humane Care for Animals Act. The well-pled allegations in count three sufficiently and adequately alleged each of the elements needed to assert a private right of action for violation of the act. This is not in dispute. In order to be convicted of an aggravated cruelty to a companion animal, the state must prove, or in this case the plaintiff must prove, that the defendant, one, intentionally committed an act, and two, intended to seriously injure or kill an animal. The plaintiff alleged both of these elements and satisfied each of these requirements to assert a private right of action under the act. The defendant intentionally made an incision into Mailey's abdomen without administering anesthesia. The defendant had a duty to administer anesthesia in the practice of veterinary care, and he knew that the natural consequences of his failure to do so would result in Mailey suffering serious injury and ultimately death. This is what has been alleged in the complaint, and this is sufficient to state a claim under the Humane Care for Animals Act. The circuit court nevertheless dismissed count three because the plaintiff had not alleged Dr. Queensborough caused Mailey's death and serious injury with a specific intent to do so. The circuit court held that for the plaintiff to state a cause of action under the Humane Care for Animals Act, they would need to allege that Dr. Klinghorn specifically intended to cause Mailey's injuries and death. In other words, that he intended to kill the dog. And that's not the standard that governs the Humane Care for Animals Act under this court's own opinions. Specifically, in this court's opinion of People v. Robards, the court held that a more general intent standard should apply. In Robards, the court rules a trial court could have inferred from the evidence presented that the defendant knew. In this case, the defendant was responsible, had a duty to care for animals, failed to do so by providing them any water, any food for an extended period of time, and as a natural result, the dogs died. This court held that the trial court could have properly inferred from that evidence presented that the defendant knew she needed to feed and water the dogs or they would die. This case is similar. In this case, the plaintiff adequately alleged that the defendant had an obligation to provide veterinarian care to my client's dog. He knew that if he made a large incision across that dog's stomach without providing any local or general anesthetic whatsoever, it would cause the companion animal, Melee, to suffer severe and serious injury and to ultimately die. This is especially true when, as the court noted in Robard, under the acts, the requirements include an omission to perform a duty. In this case, Dr. Clainsborn had a duty to perform surgery. Dr. Clainsborn had a duty and the knowledge to perform the surgery immediately and to do so using anesthesia before making any incision on Melee, but he did not. The natural and probable consequence flowing from these deliberate and intentional acts was that Melee would suffer serious injury or death, and unfortunately, this is in fact what occurred. Counsel, this was an emergency situation, obviously. They're your allegations, so you allege no facts regarding the anesthesia, but not having time to have the anesthesia administered, not having the ability to do it. No, that certainly wasn't the case here. This circumstance was an emergency, but unfortunately, Dr. Clainsborn did not treat it as such. My clients brought Melee to the emergency vet early in the evening hours on March 16th of the date in question. He was hoping the obstruction would pass. That is his explanation, but when time came around midnight and surgery became apparent, Dr. Clainsborn did not act. The emergency situation was certainly there, but he failed to take any action until approximately 3.15 a.m. in the morning, and that is when he made the incision on Melee without administering any anesthetic whatsoever, and that deliberate act is what violates the Humane Care for Animals Act in this case. The knowing, intentional incision of a dog without providing any anesthesia whatsoever. So it's the anesthesia, the lack of anesthesia, that's really the act. Yes. Turning to the second issue, the circuit court also erred when it dismissed Count 4, the plaintiff's complaint, as serving a cause of action under the Illinois Consumer Product. The well-fled allegations in Count 4 meet each of the elements needed to assert a cause of action under the Consumer Product. Deceptive act or practice by the defendant, the defendant's intent for the plaintiff to rely on that deception, the occurrence of deception in the course of or conduct involving trade or commerce, and actual damages. Again, the plaintiff's adequately alleged each of these elements. The defendant's knowingly misrepresented what services had been provided and performed on Melee. They charged the plaintiffs for medications that they knew were not administered. They misrepresented the cause of Melee's death and knowingly altered and redacted information contained within Melee's medical records prior to producing them to the plaintiffs. All of these acts and omissions were done in an attempt to deceive the plaintiffs to increase their fees and to shield themselves from liability following their malpractice. With regards to the arguments asserted in the appellee's brief, unlike in Galvin, the plaintiffs did allege damages. And unlike in Oliviera, the facts of this case are an opposite. To the extent it's applicable, it supports the plaintiff's claim to these two cases. But for the defendant's misrepresentations, the plaintiffs would not have incurred the cost of a necropsy, which ultimately confirmed the defendants had engaged in fraud and deceptive conduct. More importantly, I want to note that this argument in the appellee's brief is inapplicable because in this case, the circuit court dismissed count four, not for the plaintiff's failure to state the necessary elements under a consumer fraud claim, but for the very limited reason that the circuit court believed it was intertwined within the defendant's malpractice. So in this sense, the circuit court dismissed count four, not because of a failure to assert the necessary elements, but because, in the court's mind, the violations included or were somehow related to the defendant's provision of medical services. The circuit court's ruling in this regard misinterprets the nature of the plaintiff's allegations and the case law addressing the issues, including the rulings in Feldstein v. Ginn, Reips v. Schlecht, and Evanston Hospital v. Crane, which are cited in the appellant's brief. The plaintiff's claim was not premised on the defendant's professional malpractice or their provision of veterinary services, but rather the defendant's fraudulent conduct following their provision of veterinary services and in furtherance of their commercial interests, and that's a very important distinction in this case. Several courts have identified and made this exact distinction and have held that a medical provider is subject to the consumer fraud act if the alleged violations are related to their commercial interests. Specifically, I would refer the court to the Mathis v. Yildiz opinion, which again is cited in the appellant's brief, as well as Gadsden v. Newsom, also cited in the brief. Both of those cases involve medical services of some kind or another, but the courts nevertheless held that the consumer fraud act could and would apply because it was not related to the provision of medical services, but rather the defendant's practice of trade or commerce. With regards to this case, the violations of the act alleged in Count 4 of the plaintiff's complaint were not purely private wrongs of malpractice. They involved the defendant's repeated fraudulent conduct and deceptive acts following their malpractice. These false statements of the deceptive acts were entirely designed to keep payments the defendants had already received, increase payments the defendants could receive from the plaintiffs, and three, to avoid their own potential liability for their prior malpractice. The defendant's false statements and fraudulent conducts, including altering Mailey's bet records, were in furtherance of the defendant's commercial enterprise, both of increasing their profits and attempting to avoid liability for Mailey's untimely and unnatural death. The conduct of the defendants, as alleged in the plaintiff's amended complaint, unequivocally impacts the public at large. If left unchecked and unassailable by the consumer fraud act, then veterinarians, not in their practice of veterinary medicine, but in furtherance of their commercial interests, will be able to act with impunity in taking advantage of their undeniably and uniquely vulnerable customers, pet owners. This is not the legislative intent behind the consumer fraud act, and the circuit court's dismissal of count four of the plaintiff's complaints ultimately amounts to an unwarranted judicial grant of immunity to veterinarians that was never contemplated by the legislator and which is contrary to the public policy aims of the consumer fraud act. So for that reason, we believe that the circuit court erred in dismissing count four of the plaintiff's complaint. Turning to the third issue, the circuit court also erred when it dismissed count two and count five of the plaintiff's complaint, asserting causes of action under a theory of breach of contract. Both counts were asserted in the alternative to the plaintiff's cause of action, asserting veterinary malpractice. And the plaintiff's contractual claims were not duplicative of their malpractice claims because it is possible that different standards would be imposed between the contract claims and the tort claims. The defendant's contractual duties could be more broad and rigorous on the defendants than the defendant's duties imposed as a matter of law. The difference between a contractual agreement where I have promised and assured that I will perform certain specified duties. Conversely, tort law is what society deems necessary for each individual. And so in this particular case, Dr. Klingsborn in Neighborville Animal Hospital could have agreed to provide certain services, render certain care, and do it in a certain manner, that while there may be some certain overlap between the malpractice claims, that's not necessarily the case. The trier of fact could theoretically find that the defendant's common law liability under a theory of tort was less rigorous, less burdensome, than what the parties in this case contracted to do, which is specifically set forth in the amended complaint. Gives rise to a claim for breach of contract or contract implied in fact, and for that additional reason, we contend that the circuit court erred when they dismissed those cases. So for each of these reasons, and for all the reasons set forth in the appellant's brief, we would ask that these orders be overruled, and the case be remanded back to the circuit court for further proceedings. Thank you so much. Thank you. No questions? Thank you. Thank you.  Is it Craig? Counsel? Did I pronounce it correctly? Craig, Your Honor. Craig, sorry. Whenever you're ready, Mr. Craig. May it please the Court. Patrick Craig on behalf of Dr. Cluse-Ford and Naperville Animal Hospital. The defendant has asked that this court affirm the orders of the circuit court dismissing counts two, three, four, and six of plaintiff's complaints and affirming partial summary judgment on count five with respect to the radiology imaging in favor of defendants. Starting with plaintiff's Humane Care for Animals Act claim, the cases cited in our brief clearly state that the scope of punishable conduct is limited to intent to cause a companion animal serious injury or death. That's from the Second District in Larson, and the First District in Primus states that the evil the statute is intended to prevent is intentional killing or injuring of companion animals. And this is a case concerning veterinary care of a sick dog. It is not the kind of evil or intent to kill as outlined in those cases. Counsel, at the time that the surgery took place, doctor was on the phone with Mr. or Mrs. Miller, correct? And then the dog went into arrest, and then he hung up, and then immediately started the procedure? While Dr. Figsborn was on the phone with the plaintiffs, he had his assistant begin prepping the dog mainly for surgery. And while he was on the phone with the Millers is when he came to learn that the dog needed resuscitation efforts, and that is when he hung up on the plaintiffs. And then began the actual surgery? And began the actual surgery. Thank you. Sure. To plaintiff's credit, when this count was dismissed originally in circuit court, they admitted to the circuit court that they could not amend the allegations to allege an intent to seriously harm or kill, and that's because Dr. Klingsborn is a vet. Plaintiffs could not in good faith allege that he would ever intend to seriously injure or kill an animal. But the cases discussed in the briefs that discuss the Humane Care for Animals Act have clearly outlined that intent to seriously injure or kill is required. Meanwhile, the cases that plaintiffs cite and relied on today is Robards from this circuit. And in Robards, this court stated that in order to be convicted of aggravated cruelty to a companion animal, the state must prove the defendant intended to seriously injure or kill the animal. Paragraph 13 of that case. Discussion in that case focused on whether a defendant had the requisite intents necessary to be found guilty of aggravated cruelty. And aggravated cruelty is the subsection of the act which plaintiffs rely on to state that a defendant didn't need to intend to suffer, to intend serious injury or killing the animal. They just had to intend the act which led to it. But since Robards decisively stated that he needed to intend to seriously injure or kill, that reliance on aggravated cruelty is misplaced. And this is further supported by the First District's decision in Ancelone, which states that under the Humane Care for Animals Act, damages are only allowed for intentional acts of aggravated cruelty or torture. In this case, while plaintiffs allege there was an intentional incision, the complaint states that Dr. Klingsborn acted with reckless disregard in his actions and they conceded to the circuit court they could not amend the complaint to allege an intent to seriously injure or kill. And for that reason, Count 3 should be affirmed. Turning to the Consumer Fraud Act claim, the circuit court's dismissal should be affirmed because the consumer fraud allegations were intertwined with the defendant's provision of veterinary services rather than focused on commercial trade and commerce, which is wholly unrelated to medical services. Plaintiffs' discussion today suggested that there was a distinguishment between a failure to allege all elements of the claim and that intertwining between medical services and the trade or commerce, but that basis for dismissal is what we are seeking to be affirmed today, that those conduct was intertwined and that the actions of trade or commerce are not wholly unrelated to medical services. Several cases cited in our brief state that a claim involving allegations of improper provision of medical services does not constitute trade or commerce under the Consumer Fraud Act. When the circuit court originally dismissed that count in plaintiff's first amended complaint, Count 4, the circuit court stated that the dismissal was without prejudice and stated to the parties that if the plaintiffs could amend their complaints to add allegations of trade or commerce that occurred after the provision of veterinary services, that those amended allegations would survive a motion to dismiss. And that's exactly what happened here. Plaintiffs amended their complaint, brought Count 5 for Consumer Fraud Act claims related to alleged fraudulent misrepresentation of radiology services and medication administration. The defendants brought a motion to dismiss and the circuit court denied the motion and allowed those claims to proceed. So while plaintiffs cite Mathis as authority supporting or warranting reversal, Mathis would approve of what the circuit court did here. The court in Mathis stated that that plaintiff could bring Consumer Fraud Act claim for fraudulent balance billing, but instructed the plaintiff to amend the complaint to separate those allegations from the underlying dental malpractice. So what the circuit court here did is right in line with what the First District instructed in Mathis. Looking past the wholly unrelated to the medical services, we also argued as an additional basis for affirming dismissal of the account was plaintiff's failure to allege all elements of that claim. And just briefly on that point, the timeline of events as alleged by the plaintiff could not sustain this claim because the sole payment tender according to the complaint and the exhibits attached to the complaint was an initial invoice prior to the provision of any veterinary services being rendered. And as conceded by plaintiffs today, the acts of consumer fraud needed to necessarily occur after all the provision of veterinary services. So it could not have happened that the misrepresentations after the medical care fraudulently induced payment that necessarily occurred prior to the medical services. So that's just our separate additional basis to affirm dismissal of the consumer fraud count. Turning to breach of contract, those counts were correctly dismissed as duplicative of the professional negligence claim. Under Pippin and the First History, a complaint may not contain more than one claim that uses the same set of operative facts to satisfy essentially the same elements and claims are duplicative when they are supported by the same operative facts that result in the same injury to a plaintiff. And the only case that plaintiffs rely on to reverse dismissal is the Collins case, which the Supreme Court specifically limited to instances of legal malpractice. Defendants contend that the Supreme Court decision in Need from 2000 is determinative here because Need not only declined to extend Collins' cases of medical negligence, but it specifically prohibited duplicative claims for a breach of any duty when a traditional malpractice claim sufficiently addresses that same alleged misconduct. And here, plaintiffs alleged under the oral agreement that defendants agreed to perform and provide, quote, any treatment necessary and or helpful to ensure Mailey's full recovery. But trying to prove that the defendants violated that agreement would require expert opinion concerning the reasonableness of Dr. Klingsborn's care and would also have to deal with the timing of Dr. Klingsborn's decision to initiate surgery. Those are key issues to the medical negligence claim. And in addition to that, the damages for both claims are also identical. The veterinary expenses, forensic examination expenses, funeral expenses, and fair market value of the dog are the same damages alleged under both counts. Count one for professional negligence and counts two and six for the breach of contract and breach of contract implied in fact. As an additional basis, again, is plaintiffs' failure to sufficiently allege all elements of those breach of contract claims. Here, plaintiffs have alleged there was an oral agreement between the Millers and the defendants. But an alleged oral agreement will not be held binding and enforceable unless its terms are sufficiently definite and certain. And here, the allegations were not definite and certain as they failed to define precisely what conduct from the defendants would constitute breach under that oral agreement. The allegations, again, state that the defendants would perform any treatment necessary or helpful to ensure the dog's recovery. That is a vague phrase that does not define what the defendants are supposed to do, and that phrasing does not support plaintiffs' argument that the defendants were required to perform surgery. Regarding the contract implied in fact claim, the difference in that claim is that there must be an allegation of a promissory expression or circumstances giving rise to a promise to perform, and those allegations are also missing from plaintiffs' count six for breach of contract implied in fact. So defendants submit that dismissal of counts two and six should also be affirmed. I'll end with the summary judgment, partial summary judgment, in favor of defendants on count five, which plaintiffs did not have an opportunity to address. But that summary judgment should be affirmed because plaintiffs did not produce any evidence in support of that claim whatsoever. Dr. Clancyborn testified that a radiologist reviewed the dog's images. He testified that the radiologist's findings corroborated and confirmed his own findings, and the X-ray results were received at approximately 10 p.m., which was approximately an hour after he submitted those images for the radiologist's review. So not only did plaintiffs fail to offer any evidence to contradict that evidence, but their own disclosed expert produced a report stating that radiologists did review the imaging and provided a report to Dr. Clancyborn. Plaintiffs' sole argument for reversal on summary judgment is that there was not a foundational foundation was not laid for introduction of that radiologist's report into evidence. That was the issue of the hearsay, whether the report was hearsay for the radiologist? Correct, but there was no foundation laid for its entry such that the circuit court could not consider it for purposes of summary judgment. But the radiologist's report is not the only evidence radiology services were performed. Dr. Clancyborn testified to it, and plaintiffs' own expert individually established that a radiologist provided opinions to Dr. Clancyborn. But to address foundation, per the cases cited in our brief, Troian and Verner, Troian is from this court, Dr. Clancyborn established the foundational requirements to admit the radiologist's report as a business record. He testified that the records are a part of Naperville Animal Hospital's normal course of business, that the record was created on a staff basis, and he received the report approximately an hour after sending the x-rays. So given those foundational requirements, it's a hospital record with which Dr. Clancyborn is very familiar with, which he testified to, such business records should only be borrowed from admission if they are irrelevant or prejudicial, which is not the case here. But even if this court were to agree with plaintiffs that there was a lack of foundation, our Supreme Court stated in Wilson that hospital records, by their nature, have a high degree of reliability, and physicians are able to provide testimony pursuant to those records, even if the records themselves are not admitted into evidence. So for all those reasons, we would ask that this court also affirm partial summary judgment in favor of defendants on Count 5, and if there are no other questions, we ask this court to affirm dismissal of Counts 2, 3, 4, and 6 as well. No further questions. So what you're saying is, under Wilson, those records would come in to the extent they're relevant to other testimony, and the doctor relies on those to give other opinions, and they actually form kind of the foundation for other testimonies. Isn't that what Wilson said? The physician can rely on the hospital records to provide his own opinions, even if the records themselves are not admitted into evidence. Right. Okay, thanks. Thank you. Thank you, Mr. Green. Mr. Green. May it please the Court. Counsel speaks towards the allegations in the complaint of a reckless disregard in an attempt to try to meld it into the malpractice claim, as if there was a duty of care in the reckless disregard standard. But that's not what the plaintiffs have alleged. The plaintiffs have alleged a reckless disregard of a duty by intentionally performing surgery without administering anesthesia. This is like the defendant in Robards. The intentional act, the natural consequences of which relates to the duty of care. So in Robard, the defendant had a duty to care for her dogs. She did not do that. She instead allowed the dogs to starve and die of dehydration. It was because of her reckless disregard of her duty to care for her dogs that the Court was able to find she intentionally engaged in animal cruelty in violation of the statute. That is what the plaintiffs have alleged here, and that is the sufficient intent needed to comply with the statute's requirements. So is there any evidence other than paragraph 33 where you allege this, that not having anesthesia caused the death? At the pleading stage, I don't believe any other additional evidence was necessary. But should this matter have gone to trial on the merits as it was intended to, then yes, there would be ample evidence that the defendant's complete disregard of his duties throughout the night culminated in this intentional act. But this intentional act, the performing of surgery without administering surgery, is the operative act that caused the serious injury and ultimate death of Mailey. That would require expert testimony, though, correct? Yes, to the extent that an expert testifies that performing surgery without it. But again, to that end, courts have said, including in the case law cited in both parties' briefs in this case, that common sense can dictate a situation. In a situation like this, common sense dictates that if you perform surgery on a dog in this situation without providing any anesthesia whatsoever, that dog is going to suffer serious injury, to say nothing more of the undeniable outcome of death which occurred in this case. So, as in Robart, Robart did not specifically intend to kill her dogs. She wasn't out to kill her dogs. But because of her reckless disregard of her duty, that was the natural consequence of her actions. Same thing in this case. The defendants had a duty to provide adequate medical treatment and care. They knew that anesthesia of some form was necessary. He had ample time to do that, and in a reckless disregard of that duty, he performed an intentional act that ultimately resulted in Mailey suffering serious injury and ultimately death. With regards to the consumer fraud count, Count 4 is before Your Honors on appeal because it did assert a cause of action. Counsel is correct that once the circuit court ruled and dismissed Count 4 and specifically instructed the plaintiffs that they could not amend Count 4 unless they isolated all of their allegations regarding trade and commerce from the allegations of malpractice, that is when the plaintiffs pled Count 5. Count 5 asserts a valid cause of action as the circuit court found, but so does Count 4, and that's where the circuit court incorrectly dismissed that count. Separate, and this I think is significant for Your Honors from a public policy standpoint, is that there's going to be acts in the case of a veterinary care. These are businesses. This is a multibillion dollar nationwide industry. It's not relying on insurance. It's not similar to government payments in the same way medical industry is. Rather, these are profit-driven businesses, and there's going to be deceptive acts, and there's going to be misconduct that violates the acts that in some way, shape, or form occurs at the same time as veterinary care. But separate, what is it? Again, what a veterinary service and what is an intentionally deceptive act are separate and distinct, and we as jurists can make that distinction when facts are presented with us. They are not so intertwined with one another that we can't isolate veterinary care from deceptive and intentionally acts. Isn't that why he wanted you to plead Count 5? You're arguing Count 4 right now, correct? Correct, but I think, and that is the judge's instructions, but the judge's instructions in the circuit court was very specific. Isolate entirely, and the argument we made in the circuit court and the argument we're making now on why Count 4 was preserved for appeal is because there was deceptive acts. There was intentionally fraudulent conduct that tangentially involved the veterinary services that were being provided, but by and large, those intentionally misleading acts were done after any medical services were provided. And that's what, again, the consumer product was designed to prevent, intentionally misleading acts in business, and that's what occurred here. Thank you, Mr. Anderson. Any further questions? Thank you so much for your time. Thank you, sir. Counsel, thank you very much for your spirited arguments. We will take the case under advisement and issue a ruling in due course.